## Rumsey et ux. v. North Pennsylvania Railroad Company

*Achey & Power*, for plaintiffs.

*Eastburn & Gray*, for defendant.

SATTERTHWAITE, J., February 6, 1953.—This eminent domain case was instituted to determine the compensation to be paid for a strip of land approximately 3,500 feet in length and of an irregular width not exceeding 125 feet, containing 9.151 acres, in Middletown Township, Bucks County, Pa., taken by the North Pennsylvania Railroad Company to widen, enlarge and improve the line of its adjacent railroad by the construction of a switching yard thereon. Viewers appointed to assess damages have duly filed their report, awarding plaintiffs as the owners of the land taken the sum of $7,500. The award was confirmed absolutely in due course, no exceptions thereto or appeal therefrom having been filed by either party. Presently before the court for disposition are two petitions. The first is that of the railroad company for leave to pay the damages into court, plaintiffs having refused to accept the same and satisfy the award; the other is that of plaintiffs to strike off the entire proceedings on jurisdictional grounds.

On April 9, 1951, pursuant to petition therefor, the bond of the railroad company to secure payment of compensation for the strip of land condemned was duly approved by this court. On June 11, 1951, again pursuant to petition therefor by the company, the court appointed the viewers. Both petitions alleged that the railroad company and plaintiffs had failed to agree as to the amount of damages occasioned by the taking of the land in question. Plaintiffs in the present application to strike these proceedings, for the first time, dispute that allegation and contend that there was a valid and subsisting agreement between them and the company prior to or contemporaneous with the filing of the petition for the approval of the bond. They point to section 2 of the Act of April 9, 1856, P. L. 288, 67 PS §423, relating to the filing of such bond, and section 11 of the Act of February 19, 1849, P. L. 79, 67 PS §421, relating to the appointment of viewers to assess damages in such cases, contending that procedures therein authorized are contingent upon the inability of the parties to agree upon the amount of damages involved in the taking, and that since there had been such agreement, the court was therefore without jurisdiction either to approve the bond or to appoint viewers.

The basis for this contention is a written option dated February 6, 1951, given by plaintiffs to Reading Company, the lessee of North Pennsylvania Railroad Company. By this instrument, plaintiffs, in consideration of $1, granted to the Reading Company, its successors and assigns, the sole and exclusive right for 180 days to purchase a strip of land containing 7.20 acres for the sum of $14,400. It was expressly provided therein that notice of election to exercise the option should be given to plaintiffs in writing. It is undisputed that the present proceedings were commenced and actual entry made upon the land condemned during the term of the option; that no written notice of

the exercise of the option was ever given plaintiffs, either by Reading Company or by anyone else; and that the 7.20 acres of land covered by the option were, in fact, a part of the 9.151 acres actually taken.

Plaintiffs' argument that there was an antecedent agreement as to the amount of damages is apparently twofold: First, that the option itself constituted such a meeting of minds as to amount to a legal agreement; and secondly, that even if the option be considered merely an offer, said offer was accepted by the exercise of the power of eminent domain and the entry of the railroad company upon the premises. These arguments are both without merit.

We are totally unable to comprehend how the fact that plaintiffs bound themselves to a fixed price for the sale of this land in any way constituted a commitment by the company to pay that price or any kind of agreement *between the parties* as to the damages now involved. It is clear from the depositions that the agent of the Reading Company who negotiated with plaintiffs obtained this option solely for the purpose of getting a firm offer of the minimum price at which plaintiffs would voluntarily sell the ground involved so that he might transmit the same to his superiors without having it withdrawn before the company had an opportunity to act upon it. It is also clear from the depositions that the figure of $2,000 per acre was definitely rejected by the company and that a counteroffer of $1,000 per acre was made by the agent, which counteroffer was also definitely rejected by plaintiffs a few days before the bond was filed in these proceedings. There is therefore absolutely no merit to the argument that the option itself constituted an agreement as to the amount of the damages arising from the taking so as to deprive this court of jurisdiction. Obviously, there was no meeting of the minds of the parties on any price, even if we completely disregard the facts

that the option ran in favor of the Reading Company and not the North Pennsylvania Railroad Company, that the option covered only a part of the land actually taken, and that the condemnation resolution of the board of directors of the North Pennsylvania Railroad Company, under which the damages arise was not adopted until almost two months later, on March 30, 1951.

The second phase of plaintiffs' argument is equally untenable. They urge that the very taking of the premises constituted an acceptance of the offer contained in the option, citing section 72(2) of the A. L. I. Restatement of Contracts as authority. This section provides as follows:

"Where the offeree exercises dominion over things which are offered to him, such exercise of dominion in the absence of other circumstances showing a contrary intention is an acceptance. If circumstances indicate that the exercise of dominion is tortious the offeror may at his option treat it as an acceptance, though the offeree manifests an intention not to accept."

Assuming this to be a correct statement of the law of Pennsylvania, it has no application to the present situation. Clearly the commencement of the proceedings for condemnation itself did not amount to an exercise of the option, even under the restatement definition. Not even plaintiffs would seriously doubt that these proceedings constituted circumstances inconsistent with an intention to abide by the terms of plaintiff's offer. There is no question but that plaintiffs knew, even before the bond was filed, that the railroad company intended to condemn this land by appropriate legal proceedings. Prior notice of intention to present the company's bond to the court for approval on April 9, 1951, was stipulated. Plaintiff Roy Rumsey was personally present in court on that date when such petition was filed. Nor do plaintiffs

have the election, under the restatement principle, to treat the entry upon the premises as tortious and therefore an acceptance. Some vague, indefinite and entirely inconclusive testimony of plaintiffs in the depositions to the effect that representatives of the railroad removed some fence on the premises in March 1951 was entirely overridden by definite evidence on behalf of the railroad that the first entry was not made until April 23, 1951. Apparently, even plaintiffs' attorney agreed when depositions on the present petitions were taken that there was no exercise of dominion prior to the filing of the bond. Obviously, therefore, no tortious entry was ever made upon plaintiffs' premises; any entry after the bond had been approved was clearly authorized: Act of June 7, 1907, P. L. 461, 26 PS §141.

These conclusions dispose of the application to strike. Although plaintiffs' present attorney made some attack upon the conduct of the proceedings before the board of view by plaintiffs' former attorney, he necessarily conceded at the argument that no question can be raised about these matters at this time if the court had jurisdiction. Therefore, the other matters raised in the petition to strike need not be considered.

It follows that the company's petition for leave to pay the award into court should be granted, plaintiffs admittedly having refused to accept that amount. The only question involved in this connection is the computation of interest. The report of the board of view was filed on September 10, 1951. It was confirmed absolutely on October 25, 1951. After protracted communications between the attorney for the railroad company and the then attorney for plaintiffs relative to the satisfaction of said award after its final confirmation, the within petition for leave to pay into court was filed on January 31, 1952, and a rule was granted thereon, returnable February 25, 1952, which return

day was subsequently extended to March 10, 1952. More than two months after the return day, to wit, on May 12, 1952, plaintiffs filed an answer thereto, together with their petition to strike the proceedings. A reply to the new matter raised in the answer was filed on June 11, 1952. Depositions on disputed questions of fact raised by these petitions were taken on August 14, 1952, and September 29, 1952.

The Act of April 25, 1929, P. L. 777, as amended by the Act of March 26, 1931, P. L. 10, 26 PS §43, provides that the award of the viewers, shall, as finally confirmed, bear interest at the rate of six percent per annum from the date of the filing of the report. No provision is made in the statute for terminating the period in which such interest is to run. Under the circumstances, however, and in view of the fact that the Act of June 2, 1891, P. L. 172, 26 PS §42, expressly provides for the within petition for leave to pay the damages into court upon the failure of the party to whom such damages have been awarded to accept the same, we feel that the taking of such action should cut off the running of interest. We find no precedent under the Act of 1891, but there are cases which apply equitable principles to that effect which we are inclined to follow. See Runyan et al. v. McConnellsburg Borough School District, 37 D. & C. 119, and Errett et al. v. Pensylvania Turnpike Commission, 27 Westmoreland 55. The railroad company, under the Act of 1891, could do no more than present its petition for leave to pay into court. The fact that decision on the petition has been delayed is not the fault of petitioner. The delay, if any, in payment in this case arises solely because of the fault of plaintiffs in refusing to accept the decision of the board of view as duly confirmed, and in belatedly asserting their totally unfounded argument that the court lacked jurisdiction. Under the circumstances, therefore, we feel that interest

should be allowed on the award of the viewers from the date of filing of their report, to wit, September 10, 1951, only until the date of filing of the petition of the railroad company for leave to pay the amount of the award into court, to wit, January 31, 1952. Accordingly, we enter the following

### Order

And now, February 6, 1953, plaintiffs' petition to strike the condemnation petition and all subsequent proceedings is dismissed and overruled. It is further ordered that the petition of the North Pennsylvania Railroad Company for leave to pay the amount of the award of the board of viewers into court is granted and the rule issued thereon is hereby made absolute; provided, however, that if plaintiffs accept from the railroad company payment of the amount of said award with interest thereon from September 10, 1951, to January 31, 1952, together with costs, and satisfy the award of record within 30 days from this date, then and in that event the railroad company's petition is refused and the rule issued thereon be and hereby is discharged.